## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CHANTAL P. MURRAY, f/k/a**
    Barbara Chantal Greene,\\[1]

      Plaintiff,

vs.                      **CASE NO.**

**THE CITY OF DAYTONA BEACH, FLORIDA**,
    a political subdivision of the State of Florida,

      Defendant.
_____/

### VERIFIED COMPLAINT FOR DAMAGES WITH REQUEST FOR EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

    Plaintiff, CHANTAL P. MURRAY, f/k/a Barbara Chantal Greene, ("MURRAY" or "Plaintiff"), by and through her undersigned counsel, hereby sues Defendant, THE CITY OF DAYTONA BEACH, FLORIDA ("CITY"), and alleges the following:

### INTRODUCTION

    1.    This is a two count complaint for sex/gender discrimination (Count I) and retaliation for opposing the discrimination (Count II), as prohibited under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (collectively "Title VII");  with each count seeking damages in excess of $75,000, exclusive of interest and costs, plus equitable relief, attorney's fees and court costs.

---

[1] Mrs. Murray's name was legally changed from Barbara Chantal Greene as a result of her marriage after her separation from employment with the City of Daytona Beach. The name change became final pursuant to a Final Judgment of Change of Name on February 14, 2023. (Flagler County Circuit Court, Case No. 2022 DR 001045).

## JURISDICTION, VENUE, AND PARTIES

2.      This court has jurisdiction over the claims herein pursuant to 28 U.S.C. §§1331 and 1343.

3.      This Court is vested with jurisdiction to order an injunction, award front pay, back pay, order reinstatement, as well as awarding compensatory damages, attorney's fees and court costs, expenses, pre-judgment and post-judgment interest, and any other legal and/or equitable relief deemed appropriate by this Court.

4.      Venue is proper in this Court because the CITY maintains offices, does business, and is located within Daytona Beach, Volusia County, Florida.

5.      In addition, venue is appropriate within this Federal District and Division because the injury was sustained, and the conduct and cause of action which gives rise to the instant suit occurred within Volusia County, Florida. Venue is therefore proper within this Court, pursuant to 28 U.S.C. §1391(b).

6.      Plaintiff MURRAY is an adult female currently residing in Flagler County, Florida.

7.      Plaintiff MURRAY is also a "person" and an "employee" entitled to bring such action, pursuant to 42 U.S.C. §2000e(a) and (f), respectively, of Title VII.

8.      At all times material hereto, MURRAY served as an employee of the CITY, specifically within the CITY's Police Department ("Department").

9.      Defendant CITY is a municipal subdivision of the State of Florida and, at all times material hereto, was the public employer of Plaintiff MURRAY.

2

10.     Defendant CITY was and is a "person" and an "employer" within the meaning of 42 U.S.C. §2000e(a) and (b), respectively.

11.     As an "employer" as defined by Title VII, the CITY is subject to liability thereunder.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

12.     Plaintiff MURRAY timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on or about November 1, 2021, alleging discrimination based on Plaintiff's sex/gender (female), and retaliation for reporting and opposing the discrimination. A copy of the Charge is attached hereto as **Exhibit "A"**.

13.     Upon request, the U.S.  Department of Justice, Civil Rights Division, issued its Notice of Rights ("Right to Sue"), a copy of which is attached as **Exhibit "B"** hereto.

14.     Accordingly, MURRAY has satisfied any and all administrative prerequisites and all conditions precedent prior to the filing of this action, pursuant to the EEOC.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15.      MURRAY began her employment with CITY, and specifically, the CITY's Police Department, in June 2015.

16.     Initially, MURRAY was assigned to the Patrol Division. On October 1, 2017, Ms. Greene was re-assigned to the Crime Suppression Team ("CST"). Prior to being assigned to the CST, she was also selected to be a part of the Violent Crimes Initiative ("VCI").

17.     On or about August 12, 2018, MURRAY was assigned to the K-9 Unit ("K-9 Unit") to which she had aspired and hoped to remain in her career.

18.     Before the acts that gave rise to this lawsuit,  MURRAY satisfactorily performed her duties.

19.     For nearly the first six (6) years of her career with the CITY, MURRAY experienced no major workplace issues or concerns with the CITY, other than an on-the-job ("OJI") injury to her left shoulder in 2019.

20.     MURRAY's workplace injury was reported by MURRAY and covered by the CITY's workers' compensation carrier, which remained open until 2022.

21.     MURRAY continued to work after her OJI and satisfactorily performed her duties.

22.     However, commencing on March 24, 2021, and continuing through her "resignation," which in reality was a forced/constructive discharge, MURRAY was subjected to a discriminatory and hostile work environment based on her sex/gender (female) over the ten (10)  months preceding March 24, 2021.

23.     Specifically,  on March 24, 2021, a Department Captain, Trisha Loomis ("Captain Loomis"), requested to the K9 field via Captain Todd McBride ("Captain McBride") to have a meeting with Sergeant Jack Murray, who was MURRAY's co-worker in the K9 unit at the time, and now her spouse.

24.     During the meeting, Captain Loomis stated that she wanted to make changes within the unit, including taking away overtime, and to change the training from one night to two nights a week.

25.     Captain Loomis also stated (despite not discussing it with the Chief of Police, Jakari Young (male; "Chief Young")) that she felt the K-9 Sergeant position was not needed and was no longer going to be a position in the near future.

26.     The foregoing was despite the fact, and in contradiction to now former Deputy Chief Scott Goss' advisement, who had previously spoken with Captain Loomis and advised her the unit ran well and did not require changes or to be micromanaged by her.

27.     However, shortly after Deputy Chief Goss left for vacation, Captain Loomis made the foregoing changes.

28.     Sergeant Murray stated his reasons for why the changes would be detrimental to the K-9 Unit and the Department, but to no avail.

29.     Shortly thereafter, Sergeant Murray tendered his resignation.

30.     On or about June 2, 2021, MURRAY, along with her Union representative, Sergeant Kelly Fishpaugh (female; "Sergeant Fishpaugh"), met with Chief Young  in an effort to stop  the harassment.

31.     When Chief Young came into the conference room to meet  however, he appeared annoyed to be there and asked if Murray was planning to file a hostile work environment claim. MURRAY replied that she wished to not have to do that but wanted the issues to be addressed and changed.

32.     In the meeting. MURRAY advised Chief Young of the issues in the K-9 Unit, within the Department, and about rumors and gossip about her.

33.     MURRAY was stunned to hear Chief Young state, that due to her "circumstances," the "rumors should be expected."

5

34.     It should be noted that there was no Department policy stating that an employee or officer was required to notify command staff of the Department or the CITY in regards to a personal relationship.

35.     Furthermore, there was no Department policy stating that interdepartmental relationships were forbidden.

36.     In fact, many members of the Department have also been involved in personal and/or intimate relationships with their superiors (including Sgt. Burns, whose spouse was also married at the time).

37.     Chief Jakari's wife is also an employee of the Department that he supervises, thereby making him her supervisor.

38.     Nonetheless, Chief Young advised during the meeting that he was aware of the rumors (nonspecific), and he would likewise inform Captain Loomis of the issues.

39.     On June 10, 2021, MURRAY was asked by Sergeant Kristen Burns ("Sergeant Burns"), who had been assigned to the K-9 unit as well, how things were going in the Unit.

40.     MURRAY was informed by Captain Loomis that Sergeant Burns had been made aware of the harassment she had been enduring due to her relationship with the previous Unit supervisor, Sergeant Murray.

41.     MURRAY went on to explain  how it was negatively affecting her, both professionally and personally. Sergeant Burns dismissed the relayed concerns and,  by all accounts, took no action to address them.

42.     Sergeant Burns reaction confirmed to MURRAY that she would be subjected to further discriminatory treatment as compared to her male peers which, in fact, occurred.

43.     The following day, June 11, 2021, MURRAY  received a written reprimand for not docking her Axon body worn camera ("BWC"), something that her male peers had done but not been disciplined.

44.     Prior to Sergeant Burns being assigned to the K-9 Unit, a statement was made by Officer Darren Santiago (male) in front of the entire Unit that Captain Loomis wanted MURRAY written up for whatever policy violations he could find.

45.     Upon information and belief, Captain Loomis was notified of concerns by uninvolved officers with how MURRAY was being treated by her male peers.

46.     Of concern to MURRAY were rumors being circulated that she was being blamed for former Sergeant Murray leaving his wife, with MURRAY being referred to as a "Black Widow," and that MURRAY was also the reason Deputy Chief Goss and Captain McBride retired early.

47.     MURRAY was offended by and vigorously denied the basis of the rumors.

48.     In a further discriminatory comment in early 2019, after MURRAY had been in the K-9 Unit for about 6 months, Officer Timothy Jackson (male; "Officer Jackson") stated that the K-9 position should not be held by a female and there was no place on the Unit for a female handler.

49.     Significantly, prior to Captain Loomis becoming the K-9 captain, multiple members of the unit, all male, continually failed to participate in the Unit, routinely failed to do or complete their paperwork, and/or had behavioral issues.

50.    In addition to the foregoing, as well as sexist comments and the overall hostile work environment, the male officers were also provided preferential treatment in terms of works hours and completing their assignments within the K-9 Unit.

51.    Ultimately, MURRAY felt no other alternative but to file an internal complaint (titled "Memorandum") regarding the hostile work environment to CITY Manager Deric Feacher on or about June 18, 2021.

52.    The Memorandum was forwarded to Chief Young who allegedly ordered an internal investigation into the allegations contained in the Memorandum to be conducted by the Department's Office of Professional Standards ("OPS").

53.    Chief Young only directed OPS  to investigate *after* MURRAY submitted her Memorandum directly to the CITY.

54.    MURRAY complained to CITY Manager Feacher because, as noted in paragraph 32 herein, Chief Young told MURRAY  that she should expect the rumors and what I was experiencing.

55.    The internal investigation was allegedly conducted thereafter by the Department's OPS and completed on or about October 6, 2021.

56.    The Department's OPS investigators were made aware of felonies committed against MURRAY, as was Chief Young as well, including an illegally recorded conversation by a fellow male officer.

57.    In fact, the male officer allegedly admitted the illegal recording of a conversation with MURRAY to the Department's OPS investigators.

58.     Despite a request by MURRAY to take action, and as required by law  and the Florida Department of Law Enforcement's Criminal Justice Standards and Training Commission requirements, her request was ignored.

59.     Specifically, Chief Young ignored the facts and refused to investigate the male officer who, instead, was permitted to retire in good standing.

60.     Not surprisingly, MURRAY received a memo the same day as the investigation concluded (October 6, 2021) from Chief Young, stating that her complaints of discrimination and a hostile work environment "were determined to be unfounded."

61.     Unbelievably, the Department's OPS did not investigate the actions of the individuals of whom MURRAY complained. Instead, they spent their efforts and focus on investigating MURRAY.

62.     As evidence of the above point, when Sergeant  Fishpaugh was going to divulge facts that would support MURRAY's claims, the investigators  cut her off.

63.     Sergeant Fishpaugh also went directly to Chief Young's office and told him about serious violations that members of DBPD had committed against MURRAY, but for which Chief Young took no corrective action to address.

64.     On October 13, 2021, literally one week after declaring her complaints of discrimination and a hostile work environment to be "unfounded," MURRAY was abruptly removed from her position in the K-9 Unit.

65.     MURRAY's removal from the K-9 Unit came without any prior warning or notice, with Deputy Chief Jennifer Whittet merely stating, that MURRAY was "just not working out."

66.     Five (5) days later, on October 18, 2021. Chief Young issued a memo to "All Police Department Personnel" announcing the reassignment of MURRAY to road patrol.

67.     Notably, MURRAY was the Department's **only** female K-9 handler at the time within the K-9 Unit.

68.     Removal from the K-9 Unit resulted in a five percent (5%) reduction for MURRAY.

69.     Because of the mental anguish she had endured through her complaint, the investigation and abrupt reassignment, MURRAY sought and was approved for leave under the Family and Medial Leave Act.

70.     MURRAY thereafter remained out on leave until her "resignation" which was required by the CITY as of February 15, 2022, as a condition of resolving MURRAY's still open workers compensation claim.

71.     Notably, the workers compensation Release and Waiver stated, in paragraph 12:

> 12.     The parties agree that pursuant to Paragraph 5 of the Signed Mediation Agreement, this Release does not include the Charge of Discrimination, Equal Employment Opportunity Commission Number 510-2022-00628 ("Charge"), a copy of which is attached hereto and marked as Exhibit "C" filed by GREENE on November 1, 2021. Further, this Release does not waive GREENE's right to file suit against the CITY based solely on her claims in the Charge, but does waive her right to file any other claim against the CITY as set forth in Paragraph 9 of this Release.

72.     As a direct, proximate and foreseeable result of the actions by the CITY through Chief Young and his subordinates, MURRAY has suffered past and future pecuniary losses, emotional pain, suffering, embarrassment, humiliation, inconvenience and mental anguish, loss of enjoyment of life, loss of dignity, damage to her name and reputation, emotional distress and other non-pecuniary losses and intangible injuries.

73.     Specifically, through actions of the CITY's agents and employees, most notably Chief Young, MURRAY has been tangibly harmed concerning the terms and conditions of her employment, which damages include loss of pay and benefits; damage to her chosen career path, including the damage by being required to spend money in an effort to secure other employment; loss of future retirement and pension benefits, damage to her reputation, both as a person and as a public servant, damage by loss of dignity; as well as severe emotional anguish and distress.

74.     MURRAY has engaged the services of legal counsel and is obligated to pay legal counsel fees incurred in the prosecution of this action.

75.     MURRAY is entitled to and seeks an award of attorney's fees for bringing this action as part of her costs, pursuant to 42 U.S.C. §1988.

## CONDUCT COMPLAINED OF:

### COUNT I:
### UNLAWFUL SEX/GENDER DISCRIMINATION UNDER TITLE VII

76.     This is an action for intentional unlawful sex/gender discrimination against the CITY, as prohibited by Title VII of the Civil Rights Act ("Title VII").

77.     This count is pled cumulatively and in the alternative to Count II.   Accordingly, MURRAY hereby readopts, realleges and incorporates paragraphs 1 through 75, and 84 through 95,  as set forth more fully herein.

78.     As described in paragraphs 30 through 69 herein, MURRAY was subjected to discrimination by virtue of a hostile work environment and/or disparate treatment as compared to her male  peers.

79.     Intentional sex/gender discrimination is unlawful, and clearly established as such, pursuant to Title VII.

80.     MURRAY's removal from the K-9 Unit for no reason other than it was "just not working out," but actually on the basis of her sex/gender, constitutes an unlawful discriminatory act within the meaning of Title VII.

81.     In addition, the CITY requiring MURRAY's separation from employment as a condition of resolving/closing her workers' compensation claim in February 2022, is also believed to have been based on her of her sex/gender, and/or was disparate treatment from what her similarly situated male peers with OJI's had endured, and thereby also constitutes an unlawful discriminatory act within the meaning of Title VII.

82.     At all times material hereto, the CITY, through its authorized agents and employees, including Chief Young, was and is aware that sex/gender discrimination is prohibited under Title VII.

83.     Nonetheless, the CITY, through its authorized agents and employees, including but not limited to Chief Young, engaged in conduct, including removing MURRAY from the K-9 Unit and eventually requiring her separation as a condition of settlement of her workers compensation claim, in willful disregard of her civil rights, while attempting to disguise such violations with a purported legitimate reason, in violation of Title VII.

WHEREFORE, Plaintiff MURRAY respectfully prays:

    a)  that she be awarded back pay and benefits between the date she was removed from the K-9 Unit or the date of her separation from employment with the CITY, and the date of judgment in this matter, less any interim earnings;

b) that a Final Order be entered directing CITY to reinstate MURRAY into her former position of K-9 Officer, or to a substantially equivalent position with equal pay, benefits, rights and privileges;

c) that all of her full fringe benefits and seniority rights to which she would have enjoyed and been entitled, but for the adverse action, retroactive to the date of her removal from the K-9 Unit or the date of her separation from employment with the CITY;

d) that she be awarded compensatory damages in excess of $75,000.00 against the Defendant CITY for: past and future lost compensation caused by the loss of any salary or merit increases; for damage to her career; for damages for severe mental anguish and suffering; for damage to MURRAY's reputation as an individual and as a public employee; and for other direct and consequential damages suffered by Plaintiff as the direct and proximate result of all of the Defendant's actions in violation of Plaintiff's clearly established civil rights;

e) that she be awarded prejudgment interest;

f) that a Final Order be entered directing CITY to not discriminate against MURRAY and other similarly situated employees in the future;

g) that a Final Order be entered directing that all disciplinary actions, negative comments, and any claims of performance deficiencies against MURRAY as a purported basis for removing her from the K-9 Unit and forming a matter of public record be expunged, or declared to have been improperly issued, to the extent permissible by Federal and Florida law;

h) that MURRAY be awarded front pay and benefits for a reasonable time, within the discretion of this Court, in lieu of reinstatement, if determined that reinstatement is impossible or impractical;

i) that MURRAY be awarded costs of this action, including reasonable attorney's fees as a part of her costs, pursuant to 42 U.S.C.§1988; and

j) that MURRAY be awarded such other legal and/or equitable relief as may be deemed appropriate by this Court.

**COUNT II**
**UNLAWFUL RETALIATION UNDER TITLE VII**

84.    This is an action for unlawful retaliation for complaining of discrimination brought pursuant to Title VII.

85.    This count is pled cumulatively and in the alternative to Count I.

86.    Accordingly, Plaintiff MURRAY realleges and incorporates paragraphs 1 through 83 of this Verified Complaint as if set forth in full herein.

87.    As set forth in paragraphs 30 through 70 herein, MURRAY complained of a hostile work environment and disparate treatment based on her sex/gender, and thereafter was subjected to retaliation for doing so.

88.    The actions of the CITY, through its authorized agents and employees, including but not limited to Chief Young, as described herein, constitute retaliation against Plaintiff within close temporal proximity to her complaint of a hostile work environment and disparate treatment based on her sex/gender.

89.    By retaliating in such fashion against MURRAY as set forth herein, the CITY violated 42 U.S.C. §2000e-3(a) of Title VII, which makes it "an unlawful employment practice

14

for an employer… to discriminate against any individual… b**ecause [she] has opposed any practice made an unlawful employment practice by this subchapter, or** because [she] has made a **charge**, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (Emphasis added).

90.     No legitimate business reasons existed under the CITY's policies, past practices, procedures and/or supervisory instructions to justify the retaliatory treatment of MURRAY, as set forth in paragraphs 30 through 70  herein.

91.     The CITY's employees and agents, including but not limited to Chief Young, actively and knowingly participated in the retaliatory personnel action against MURRAY because of her complaint of and opposition to the sex/gender discrimination, in violation of her civil rights under Title VII.

92.      The CITY's employees and agents, including but not limited to Chief Young, possessed constructive and/or actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to MURRAY would result and/or acted with such reckless disregard or absence of reasonable care to constitute a conscious disregard or indifference to the rights of MURRAY, and/or acted with such gross indifference that they contributed to MURRAY's damages, injuries and losses.

93.     At all times material hereto, the CITY, through its authorized agents and employees, including Chief Young, was and is aware that sex/gender discrimination is prohibited under Title VII.

94.     Nonetheless, the CITY, through its authorized agents and employees, including but not limited to Chief Young, engaged in conduct, including removing MURRAY from the K-

9 Unit and eventually requiring her separation as a condition of settlement of her workers compensation claim, in willful disregard of her civil rights, while attempting to disguise such violations with a purported legitimate reason, in violation of Title VII.

95.    As a direct and proximate result of the retaliation complained of in this action, MURRAY has also suffered mental anguish, stress, humiliation, and emotional distress.

WHEREFORE, Plaintiff MURRAY respectfully prays:

a)   that she be awarded back pay and benefits between the date she was removed from the K-9 Unit or the date of her separation from employment with the CITY, and the date of judgment in this matter, less any interim earnings;

b)   that a Final Order be entered directing CITY to reinstate MURRAY into her former position of K-9 Officer, or to a substantially equivalent position with equal pay, benefits, rights and privileges;

c)   that all of her full fringe benefits and seniority rights to which she would have enjoyed and been entitled, but for the adverse action, retroactive to the date of her removal from the K-9 Unit or the date of her separation from employment with the CITY;

d)   that she be awarded compensatory damages in excess of $75,000.00 against the Defendant CITY for: past and future lost compensation caused by the loss of any salary or merit increases; for damage to her career; for damages for severe mental anguish and suffering; for damage to MURRAY's reputation as an individual and as a public employee; and for other direct and consequential damages suffered by

Plaintiff as the direct and proximate result of all of the Defendant's actions in violation of Plaintiff's clearly established civil rights;

e)  that she be awarded prejudgment interest;

f)  that a Final Order be entered directing CITY to not discriminate against MURRAY and other similarly situated employees in the future;

g)  that a Final Order be entered directing that all disciplinary actions, negative comments, and any claims of performance deficiencies against MURRAY as a purported basis for removing her from the K-9 Unit and forming a matter of public record be expunged, or declared to have been improperly issued, to the extent permissible by Federal and Florida law;

h)  that MURRAY be awarded front pay and benefits for a reasonable time, within the discretion of this Court, in lieu of reinstatement, if determined that reinstatement is impossible or impractical;

i)  that MURRAY be awarded costs of this action, including reasonable attorney's fees as a part of her costs, pursuant to 42 U.S.C.§1988; and

j)  that MURRAY be awarded such other legal and/or equitable relief as may be deemed appropriate by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff, CHANTAL P. MURRAY, hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Dated this <u>3rd</u> day of August, 2023.

                                  Respectfully submitted,

                                  <u>*/s Gary D. Wilson*</u>
                                  Gary D. Wilson, Esq.
                                  Florida Bar No.: 0846406
                                  WILSON McCOY, P.A.
                                  100 E. Sybelia Avenue, Suite 205
                                  Maitland, Florida  32751
                                  Telephone:  (407) 803-5400
                                  Facsimile:  (407) 803-4617
                                  Primary email: gwilson@wilsonmccoylaw.com
                                  Secondary email: jbarrero@wilsonmccoylaw.com

                                  **Attorneys for Plaintiff, Chantal P. Murray**

## <u>VERIFICATION</u>

Personally appeared before the undersigned, CHANTAL P. MURRAY, who being first duly sworn, deposes and says that the allegations of this Verified Complaint, consisting of paragraphs 1 through 95, inclusive, are true and correct to the best of her knowledge, information and belief.

_____
CHANTAL P. MURRAY

STATE OF FLORIDA        )

COUNTY OF FLAGLER )

The foregoing instrument was acknowledged before me this _3rd_ day of _August_____, 2023, by <u>Chantal P. Murray,</u> who is personally known to me or who has produced _Driver license_____ as identification, and who did take an oath.

_____
Notary Public

My Commission Expires: _April 26, 2026_

Seal:



JESSICA MILLER
Commission # HH 257739
Expires April 26, 2026

19